FILED
 2005 Feb-22 PM 04:23
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LESLI A. BASS,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | CASE NO. CV-04-B-1366-S |
| | } | |
| **NEUHEISEL LAW FIRM, P.C.;** | } | |
| **KATHRYN NEUHEISEL,** | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

Currently before the court is a Motion to Compel Arbitration filed by defendants Neuheisel Law Firm, P.C. and Kathryn Neuheisel. (Doc. 14.) Also before the court is a Motion for Intervention filed by Collect America, Ltd., (Doc. 15), a former defendant in this action who was dismissed without prejudice from this case on August 26, 2004, (Doc. 13). Plaintiff Lesli Bass brought suit for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. (Doc. 1 at 1.) The underlying debt in this case arose out of plaintiff's credit card account with MBNA America Bank, N.A. ("MBNA"). (Doc. 14, Ex. 1, ex. A.) An amendment to the cardholder agreement for that account set forth the arbitration clause that is now at issue. (Doc. 14, Ex. 1, ex. D.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the defendants' Motion to Compel Arbitration and Collect America's Motion for Intervention are due to be denied.

## I. FACTUAL SUMMARY

Plaintiff entered into a cardholder agreement with MBNA in July of 1997. (Doc. 14, Ex. 1 ¶ 5.) The agreement states that "[w]hen you accept or use the account, you agree to the terms in this Agreement." (Doc. 14, Ex. 1, ex. B at 1.)  After receiving the credit card, Ms. Bass made purchases on and payments to the account.  (Doc. 14, Ex. 1, ¶ 7.)  On July 1, 1999, MBNA amended the agreement to provide that it could "amend your agreement by adding, deleting, or changing provisions in compliance with the applicable notification requirements of federal law and the laws of the State of Delaware." (Doc. 14, Ex. 1, ex. C at 2).

Prior to January 25, 2000, MBNA sent another notice of amendment to the cardholder agreement to MBNA's then-existing cardholders.  (Doc. 14, Ex. 1 ¶ 10.)  This amendment added an arbitration provision to the original contract.  (*Id.*)  Plaintiff denies having ever received this amendment from MBNA.  (Pl.'s Mem. in Opp'n to Def.s' Mot. to Compel Arbitration ("Pl.'s Opp'n to Arbitration") Ex. 1 ¶ 4.)  She does not dispute that she did not send a written rejection of the arbitration clause during the notice's opt-out period.  Rather, plaintiff asserts that her MBNA card was stolen in November of 1999 and that she immediately notified MBNA of the theft.  (*Id.* ¶ 5.)  She further asserts that MBNA closed her account upon notification of this alleged theft, and that she was thereafter prohibited from making any further charges to the account.  (*Id.*)  Defendants respond to this assertion with an affidavit from Stephen Fox, a Personal Banking Officer at MBNA.  ("Defs.' Reply in Supp. of their Mot. to Compel Arbitration ("Defs.' Reply"), Ex. 1.)  Fox states that MBNA's

business records do not show that MBNA received any notification that plaintiff's card had been stolen, nor did MBNA close her account in November 1999. (*Id.* ¶¶ 12-13.) He further asserts that plaintiff last made a payment on her account in March 2002, and that MBNA charged off her account on November 29, 2002 by assigning it to an entity known as CACV. (*Id.* ¶ 14.) Defendants' Motion to Compel Arbitration states that this company is formally known as CACV of Colorado, LLC, which is a wholly owned subsidiary of Collect America, a former defendant in this case. (Doc. 14 at 6.)

Defendants rely on the affidavit testimony of Peter Brook, an agent of CACV, to establish the ownership of plaintiff's debt after MBNA assigned it to CACV. (Doc. 14, Ex. 1.) Brook states that Collect America, CACV's parent company, was responsible for CACV's debt placement for recovery. (*Id.* ¶ 13.) He asserts that Collect America placed the debt with Cube Recovery, LLC ("Cube"), a company which had entered into a franchise agreement with Collect America in which Cube received debts owed to CACV for recovery. (*Id.*) Brook further testifies that Cube is required, as Collect America's franchisee, to use a licensed attorney in its efforts to recover debts owed to CACV. (*Id.*) Cube used defendant Neuheisel Law Firm, of whom defendant Kathryn Neuheisel is a principal, for the purpose of recovering plaintiff's debt to CACV. (*Id.*) Finally, defendants informed the court at oral argument that the Cube corporation is either wholly or largely controlled by Ms. Neuheisel. The basis for plaintiff's complaint arises out of Ms. Neuheisel's alleged actions after she became responsible for recovery of plaintiff's debt. The particularities of those allegations are immaterial at this stage of the proceedings and so will not be discussed.

## II. DISCUSSION

Plaintiff sets forth two primary arguments in support of her position that the arbitration clause in the 2000 amendment does not apply to her current claim. First, she asserts that the clause never took effect in regards to her account, because she lost the card and closed her account prior to the issuance of the amendment. (Pl.'s Opp'n to Arbitration at 3-4). Because there is a significant factual dispute over whether plaintiff's account was indeed closed prior to the addition of the arbitration clause, the court will not attempt to resolve this issue at this stage in the proceedings. Plaintiff's second argument is that even if she was bound to arbitrate disputes with MBNA, she is not bound to arbitrate this dispute with these defendants because the dispute and the defendants are outside the scope of the arbitration agreement. (*Id.* at 4-8.) Because the resolution of this issue depends on exactly who the defendants in this case ultimately are,[1] the court will first consider Collect America's Motion for Intervention before turning to whether plaintiff must arbitrate her claim against the defendants then properly before the court.

**A.    Collect America's Motion for Intervention**

---

[1] Plaintiff conceded at oral argument that if there were a valid arbitration agreement between her and MBNA and if Collect America were allowed to intervene, the parties would then be required by the agreement to submit to arbitration.

Collect America argues that it is entitled to intervene in this litigation as a matter of right. (Doc. 15 at 6.) Rule 24 of the Federal Rules of Civil Procedure provides for intervention as a matter of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Thus the proposed intervenor must satisfy four requirements: 1) its application to intervene must be timely; 2) it must have an interest relating to the property or transaction which is the subject matter of the action; 3) it must be so situated that the disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and 4) its interest must be inadequately represented by the existing parties to the action. *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002); *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996).

Plaintiff concedes, as she must, that Collect America has satisfied the timeliness requirement for intervention. (Pl.'s Mem. in Opp'n to Collect America's Mot. for Intervention ("Pl.'s Opp'n to Intervention") at 2.) She argues, however, that Collect America has failed to meet any of the remaining three requirements. (*Id.*) In turn, Collect America argues that it has an interest in this case because of the "unique franchise relationship [it] has with Cube Recovery, LLC and defendants" and states that it owns the debt "through its wholly owned subsidiary." (Doc. 15 at 4.) The potential intervenor further states that

5

plaintiff "contends that Collect America, among others, was responsible for the disputed conduct" that is the basis for this suit. (*Id.* at 5). Collect America believes that if the court eventually finds that this conduct was improper, without first allowing it to intervene, then it may be adversely affected by that finding. (*Id.*)  Further, Collect America argues that its ability to protect its interests may be impaired, if it is not allowed to intervene, because it may be potentially liable for the underlying debt, or plaintiff may later re-file against it on her claim. (*Id.*)

For its primary basis for these arguments, Collect America points the court to several paragraphs in the first three counts of plaintiff's complaint, as well as plaintiff's entire fourth count. (*Id.* at 4-5; Def. Collect America, Ltd.'s Reply in Supp. of its Mot. to Intervene at 1.) In the cited paragraphs, plaintiff makes two allegations that specifically mention Collect America, though that corporation is not singled out for a particular wrongdoing. First, plaintiff alleges that employees of the Neuheisel Law Firm made communications on behalf of that firm, Kathryn Neuheisel, and Collect America. (Doc. 1 ¶ 9.) Second, plaintiff argues that defendants Kathryn Neuheisel, Neuheisel Law Firm, and Collect America should have known of the alleged conduct directed towards the plaintiff. (*Id.* ¶¶ 13, 18.) Plaintiff's Count Four refers repeatedly to "Defendants" collectively; at the time the complaint was filed, Collect America remained a defendant in this case. (*Id.* ¶¶ 22-32.)

      **1.**    **Collect America does not presently have a legally protectable interest in this case because it does not own the debt.**

From the facts before the court at this point, it appears that Collect America likely has no interest related to this particular litigation. MBNA assigned plaintiff's account to CACV, a wholly owned subsidiary of Collect America. (Doc. 14, Ex. 1, ex. A.) As plaintiff correctly argues, the account is therefore owned by CACV, not Collect America. (Pl.'s Opp'n to Intervention at 2.) Collect America does not disagree with this position, stating that "Collect America through its wholly owned subsidiary owns the underlying debt which the employees of defendants attempted to recover." (Doc. 15 at 4.) The question becomes whether Collect America can have any legally protectable interest in this account owned by its subsidiary corporation. That interest must be "one which the *substantive* law recognizes as belonging to or being owned by the applicant [for intervention]." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (quoting *New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984)). The court must therefore look to the law of corporations to settle the issue of whether Collect America may have a legally protectable interest in the account owned by its subsidiary.

Parent corporations and their subsidiaries are distinct entities, with separate and unshared assets and liabilities. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (internal quotation marks omitted)); *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1126 (11th Cir. 1993) ("Alabama law . . . recognizes that a parent corporation is a distinct entity

7

from its subsidiary and that the parent is not liable for the acts of its subsidiary . . . ."); *Perry v. Household Retail Servs.*, 953 F. Supp. 1378, 1381 (M.D. Ala. 1996) ("The mere fact that one corporation owns all the stock of another corporation does not destroy the separate corporate identities." (citing *Messick v. Moring*, 514 So. 2d 892, 895 (Ala. 1987)); *In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) ("As a rule, parent and subsidiary corporations are separate entities, having separate assets and liabilities.")). CACV, the subsidiary corporation and actual owner of the debt, is therefore a separate entity from Collect America. One corporation clearly does not have a legally protectable interest in an account held by another corporation, or possible liabilities arising from that account. A parent-subsidiary corporate relationship does not change this fact. *See In re Regency Holdings*, 216 B.R. at 375 ("The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's." (citing *In re Beck Indus., Inc.*, 479 F.2d 410, 415-16 (2d Cir. 1973)). The court therefore finds that Collect America does not have a legally protectable interest here because the asset that is (tangentially) at issue here belongs to another corporation.

   **2.   Collect America has failed to adequately demonstrate that it may be unable to protect its interests if it is not allowed to intervene in this case.**

Even had the court found that Collect America has a protectable interest related to this action, its intervention effort would fail the third requirement for Rule 24 intervention. There has been no demonstration that Collect America would be impeded or impaired in its ability to protect its interests were the court to refuse to allow intervention. Collect America raises

8

the vague possibility that it "may be affected directly or adversely" if the court ultimately finds for plaintiff, and that plaintiff may re-file her claims against the corporation. (Doc. 15 at 5.)  However, Collect America fails to specify how its absence from the current proceeding could impair its protection of its interests in the future.  Additionally, Alabama collateral estoppel law would allow Collect America to litigate any claims related to this plaintiff's account without regard to the result in this case, because Collect America would not have been a party to this case. *See Stewart v. Brinley*, No. 1020925, 2004 WL 1859638, at *7-8 (Ala. Aug. 20, 2004) (noting Alabama's continued adherence to the doctrine of mutuality of estoppel, which requires the parties to a second suit be identical to the parties of an earlier suit before issue preclusion is permitted).  The court therefore finds that disposition of this action will not have an effect on Collect America's ability to protect any interest it may have in this case.

Because the court has found that Collect America fails to satisfy two requirements for intervention, the court declines to consider the final requirement, whether the existing defendants adequately represent Collect America's alleged interests.  If further proceedings in this case reveal a heretofore unseen but substantial interest or potential liability on the part of Collect America, the court may reconsider its ruling on this motion.  However, the court is currently of the belief that Collect America has not shown a valid, legally protectable interest whose protection may be impeded if intervention is disallowed, and therefore its Motion for Intervention will be denied.

**B.      Defendants' Motion to Compel Arbitration**

The second issue before the court is whether defendants Neuheisel Law Firm and Kathryn Neuheisel are entitled to enforce the arbitration agreement contained in MBNA's amendment to its cardholder agreement. The court will assume for the sole purpose of resolving this issue that the arbitration amendment did take effect in regards to plaintiff's account sometime after it was sent out in January of 2000. The notice of amendment containing the arbitration clause stated in part as follows:

> These amendments change the terms of your Cardholder agreement. Please read this document carefully and keep it with your Cardholder agreement. Except for these Amendments, the terms of your Cardholder Agreement continue in full force and effect . . .
>
> As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect you [sic] right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration will become effective on February 1, 2000. The Arbitration Section reads:
>
> Arbitration: Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, in tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. . . .

(Doc. 14, Ex. 1, ex. D at 1-2.)

**1.   The terms of the agreement cannot be construed so broadly as to allow defendants to enforce plaintiff's arbitration agreement with MBNA.**

10

The issue before the court is whether the scope of this clause can be construed to include Neuheisel Law Firm and Kathryn Neuheisel. Only claims brought "by either you or us against the other, or against the employees, agents or assigns of the other" are subject to arbitration. (*Id.* at 1.) A precise definition of "us" is therefore critical to this determination. The amendment defines "we" and "us" to mean MBNA, "its parents, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them."[2] (*Id.* at 2.)

Only those companies or persons that fall within the definition of "we" and "us" may enforce the arbitration agreement. It seems clear enough that CACV falls within the definition, as it is a purchaser of the account. Furthermore, Collect America likely qualifies under the definition as well, as an agent of purchaser CACV. (*See id.* at 5 ("'[W]e' and 'us'

---

[2] The second sentence of the definition for the terms "we" and "us" in the amendment clause also includes the following third parties within the definition:

> any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) *if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us*.

(Doc. 14, Ex. 1, ex. D at 2 (emphasis added).) The court here considers only the first sentence of the definition of "we" and "us." The second sentence expands the definition of "we" and "us" only in cases where "a third party is named by you as a co-defendant in any Claim you assert against us." (*Id.*) Even assuming Collect America qualifies as "us" as it is used in the final word of that sentence, plaintiff has dismissed that corporation as a defendant. (Doc. 13.) The potential third parties here, Neuheisel Law Firm and Kathryn Neuheisel, are co-defendants only with each other. Because neither falls within the more limited definition of "us" in the first sentence, the second sentence of the definitional clause does not provide a means for defendants to enforce the arbitration clause.

11

means MBNA America Bank, N.A., . . . any purchaser of your account, and all of [its] . . . agents and assigns . . . .").) Although Collect America is CACV's parent company, there is evidence that Collect America also acts as CACV's debt placement agent with other companies for recovery. (Doc. 14, Ex. 1, ¶ 13.) Assuming arguendo that Collect America is an agent of CACV, the question then becomes whether a company several steps removed from an agent of the purchaser of an account can enforce an arbitration agreement attached to that account. According to the language of the agreement, the answer to that question is no. The first sentence of the definition of the category of those who may enforce the agreement limits that category to the "officers, directors, employees, agents and assigns" of either MBNA or "its parent, subsidiaries, and any purchaser" of the account. (Doc. 14, Ex. 1, ex. D at 2.) When Collect America, an agent of the purchaser, placed the debt with a franchisee, Cube Recovery, (Doc. 14, Ex. 1, ¶ 13), the bounds of the arbitration agreement were exceeded. The fact that the franchisee is not a defendant in this case further dilutes the case for compelling arbitration. Defendant Neuheisel Law Firm cannot, by the terms of the agreement, compel arbitration because it is even beyond Cube in relation to plaintiff's agreement with MBNA. It follows that defendant Kathryn Neuheisel, who as the supervising attorney at the firm is yet another step removed from the agreement, also is not entitled to enforce the arbitration agreement between plaintiff and MBNA.

    **2.**    **Defendants do not qualify for the exceptions that allow nonsignatories to enforce an arbitration agreement against a signatory party.**

Defendants argue that there are certain cases where the law allows a nonsignatory to an arbitration agreement to compel a party to that agreement to submit to arbitration.[3] (Defs.' Reply at 5.)  Here the court is asked to look beyond the strict terms of the agreement to determine whether other legal principles may allow these defendants to compel arbitration on plaintiff's claim.  The Eleventh Circuit has indeed recognized three primary limited exceptions that may allow nonsignatories to enforce an arbitration agreement.  *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).  Although defendants did not reference the particular exceptions of the *MS Dealer* case, the court will determine whether they should apply in this case.

---

[3] The two cases that defendants primarily focus on are distinguishable from the case at bar.  The first case relied on by defendants is *McBro Planning & Development Co. v. Triangle Electrical Construction Co.*, 741 F.2d 342 (11th Cir. 1984).  (Defs.' Reply at 5.)  There the court, while noting its concern with compelling arbitration without a written agreement between the parties, affirmed the district court's granting of arbitration based in part on "the close relationship of the three entities here involved."  741 F.2d at 343.  Two of those entities were the parties, who had signed separate arbitration agreements related to the same construction project with the non-party third entity, but not with each other.  *Id.*  In the present case, it should be clear at this point that no such close relationship existed between the parties or between MBNA and defendants.  The *McBro* court also noted that the plaintiff's claims were "intimately founded in and intertwined with the underlying contract obligations."  *Id.* at 344 (citation omitted).  As will be discussed, plaintiff's claims of improper debt collection activities on the part of defendants have little to do with the underlying cardmember agreement plaintiff entered into with MBNA.

The other case cited by defendants to support enforcement of arbitration agreements by nonsignatories is *Staples v. The Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996).  (Defs.' Reply at 5.)  As defendants point out, the court there explained that "because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."  936 F. Supp. at 860 (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993)).  However, in the current case, defendants are not agents, employees, or representatives of any entity that was bound by the arbitration clause of plaintiff's agreement with MBNA.

The basis for the first exception is equitable estoppel. *Id.* The *MS Dealer* opinion set forth two situations where this exception applies. The first is when the signatory to the arbitration agreement "'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *Id.* (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)) (alteration in *MS Dealer*). This exception would be satisfied if "each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate." *Id.* (quoting *Sunkist Soft Drinks, Inc.*, 10 F.3d at 757) (alterations in *MS Dealer*). Plaintiff does not reference her agreement with MBNA, nor any term of that agreement, at all in her complaint. Plaintiff does not contest the debt or the underlying agreement, as the signatory in the *MS Dealer* case (where arbitration was ordered) did. 177 F.3d at 945. Instead, she relies on Alabama tort law and the FDCPA[4] to allege that those who ultimately became responsible for collecting the debt did so in an improper manner. (Doc. 1.) Plaintiff's claims in this case have virtually nothing to do with her contract with MBNA, other than the fact that her debt on that account eventually led to defendants' alleged improper behavior in trying to collect that debt.

---

[4] The court recognizes "that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." *MS Dealer*, 177 F.3d at 948 n.4 (quoting *Sunkist Soft Drinks*, 10 F.3d at 758). However, the underlying contract in this case, plaintiff's cardmember agreement with MBNA, is not at issue here. Because defendants' allegedly tortious conduct gave rise to plaintiff's claims, and not the contract itself, the court properly considers these claims as torts.

The second exception for equitable estoppel applies when the signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997) (abrogated on other grounds by *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002))). Plaintiff, the signatory in this case, has made no allegations of concerted misconduct between MBNA—the other signatory—and the nonsignatory defendants, so this exception does not apply. Because none of the proper circumstances are present in this case, the court finds that equitable estoppel does not apply to compel arbitration of plaintiff's claims.

The Eleventh Circuit in its *MS Dealer* opinion set forth two further exceptions allowing nonsignatories to enforce arbitration agreements. The court wrote:

> A second exception exists when, under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. A third exception arises when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract.

177 F.3d at 947 (internal citations and quotations omitted). The "second exception" in the quoted paragraph is inapplicable because there are no defendants in this case who were signatory parties to the arbitration agreement. The "third exception" is perhaps more applicable to the present situation because of the terms in plaintiff's agreement with MBNA discussing which third parties may enforce the agreement. (Doc. 14, Ex. 1, ex. D at 2.)

However, as noted above, the agreement does not extend far enough to give these defendants the right to enforce the arbitration amendment.

### III. CONCLUSION

For the reasons stated herein, the court is of the opinion that Collect America's Motion for Intervention and defendants' Motion to Compel Arbitration are both due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this the 22nd day of February, 2005.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE